UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

**CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316 - KSF**

IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006

RELATING TO:

*Hebert, et al. v. Comair*, et al., No. 5:07-CV-320

**OPINION AND ORDER**

* * * * * * * * * *

This matter is before the Court on Comair's motion in limine to exclude evidence from Dr. Richard A. Levy regarding Brian Woodward's cause of death and his pain and suffering. [DE 3471]. Having been fully briefed, this matter is ripe for consideration.

**I.   BACKGROUND**

Comair seeks to exclude "the opinions of Dr. Richard Levy concerning the cause of Mr. Woodward's death, length of time from the accident to death and any pain and suffering experienced during such interval." [DE 3471, p. 3]. Comair notes that Kentucky law requires some level of consciousness between the time of injury and death to support a claim of damages for pain and suffering. It argues Dr. Levy lacks the qualifications to offer an opinion as to the cause of death or the state of consciousness of Mr. Woodward following the initial impact of the plane with the berm. It notes that Dr. Levy "is not a pathologist, nor an expert in accident reconstruction, injury causation analysis or biomechanics." *Id.* Comair notes that Dr. Levy did not conduct an autopsy on Mr. Woodward and was not present while one was performed. It further claims that the autopsy reports provide no evidence that Mr. Woodward was conscious following impact with the berm. *Id.* It also relies on the opinion of Dr. James Raddin that Woodward's alleged cervical fracture would have rendered him unconscious. Comair concludes that Dr. Levy has no factual basis nor

expertise for an opinion that Woodward had any period of consciousness following impact. Even if Dr. Levy were qualified to render such opinions, Comair argues alternatively, Dr. Levy "lacked the underlying scientific data or calculations to render opinions on such matters." *Id.* at 4.

Plaintiffs respond that Dr. Levy is a physician with over forty years of medical experience; he served as Chief of Psychiatry and Chief of Neuropsychiatry at the United States Air Force School of Aerospace Medicine; and he was the Director of Life Services and Senior Flight Surgeon at the Air Force Safety Center. [DE 3514, p. 2]. During his twenty years with the Air Force, Dr. Levy was responsible for the human factors analysis of approximately 400 Air Force aircraft accidents. He analyzed approximately 48 voice recorder tapes from fatal aircraft accidents where there was certain knowledge that death was imminent. *Id.* He interviewed survivors of accidents and evaluated former Vietnam prisoners of war regarding their expectation of death when first shot down and later when brutally imprisoned. *Id.* at 3. In the present case, Dr. Levy relies on three autopsies performed by five forensic pathologists, as well as NTSB reports and an accident reconstruction chart by Don Kennedy. *Id.*; DE 3471, Ex. 1, p. 1.

Plaintiffs note that Dr. LeVaughn's autopsy reported smoke and soot inhalation associated with severe thermal injury and the absence of lethal blunt or penetrating trauma. *Id.* at 4. Dr. Mitchell's autopsy attributed Woodward's death to thermal injuries. The three pathologists involved in the first autopsy found blunt force, thermal injuries and soot deposition of airways. *Id.* at 5. Plaintiffs argue that Dr. Levy's opinions based on these reports, other data, and his experience will assist the trier of fact in understanding the medical and aeronautical information associated with a determination of the cause and manner of death.

In response to Comair's claim that Dr. Levy is not qualified, Plaintiffs assert Comair is applying an overly rigid analysis, similar to that reversed in *Jahn v. Equine Services, PSC*, 233 F.3d 382 (6th Cir. 2000). Plaintiffs argue that Comair focuses on job titles that Dr. Levy may be lacking, rather than the training and experience he does have. Regarding Comair's claim of a lack of

2

supporting data, Plaintiffs argue that Dr. Levy's testimony is based upon the most reliable information available – the autopsy reports and NTSB reports. Finally, they note that Dr. Levy's methodology is consistent with the medical approach that he employed in his life's work. [DE 3514, pp. 2-9].

## II. ANALYSIS

### A. Standard for Expert Testimony under Rule 702

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In the exercise of its gatekeeping role under FRE 702, a district court is responsible for determining the relevance and reliability of all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The Sixth Circuit recently summarized the standard for admissibility of expert testimony as follows:

> [A] proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Third, the testimony must be reliable. *Id.*

*In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 528-29 (6th Cir. 2008). Knowledge meets the standard for evidentiary reliability when "an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice in the relevant field." *Jahn v. Equine Services, PSC*, 233 F.3d 382, 388 (6th Cir. 2000). Comair cites the legal standard for unduly prejudicial testimony in its motion, but its argument concerns Dr. Levy's qualifications and the evidentiary bases for his testimony.

3

**B.     Comair's Arguments To Exclude Dr. Levy's Testimony Are Not Well Taken**

Comair is well aware that "the rejection of expert testimony is the exception rather than the rule." *In re Air Crash at Lexington, Kentucky, August 27, 2006*, 2008 WL 2954973, *2 (E.D. Ky. 2008). Comair was reminded of that fact last year when it unsuccessfully sought to exclude five experts offered by the Plaintiffs' Steering Committee and the USA. *Id.*

Comair's attack that Dr. Levy cannot testify regarding the cause of death because he did not personally perform an autopsy on Mr. Woodward is without merit. Medical doctors regularly rely on reports from other professionals, such as autopsies, x-rays, lab work, and the like. "Experts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as 'the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" *Jahn v. Equine Services, PSC*, 233 F.3d 382, 388 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 592).

Equally meritless is the complaint that Dr. Levy selected from the autopsies "only those portions most favorable to Plaintiffs' claims." [DE 3471, p. 3]. Such arguments go to credibility, not admissibility. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596. This same analysis applies to the argument that Dr. Levy's opinion is contradicted by Dr. James Raddin, who will opine that Woodward was unconscious after hitting the berm. "[C]omparing two pieces of evidence and determining which is more credible should be left for the finder of fact and should not be considered when ruling on Rule 702 admissibility." *Jahn*, 233 F.3d at 391.

The Court finds that Dr. Levy is qualified by "knowledge, skill, experience, training, or education" to testify as proposed. Rule 702. He is a medical doctor with over forty years of medical practice. [DE 3514, p. 2]. He is certified by the American Board of Psychiatry and Neurology and by the American Board of Preventive Medicine in Aerospace Medicine. He was on

active duty in the Air Force for twenty years, during which time he was responsible for the human factors analysis of approximately 400 USAF aircraft accidents. He analyzed approximately 48 tapes from fatal aircraft accidents in which there was certain knowledge that death was imminent. He interviewed survivors of fatal accidents and people who overheard the final moments of pilots over a radio frequency. He also participated in the evaluation of former Vietnam prisoners of war and learned of their expectation of death when first shot down and later during brutal imprisonment. [DE 3514, pp. 2-3]. Dr. Levy has unique experiences that significantly enhance his qualifications to testify regarding cause of death and pain and suffering when death is imminent. Comair's claim that he is not qualified is devoid of merit.

Dr. Levy's specialized knowledge "will assist the trier of fact to understand the evidence or determine a fact in issue." "Physicians and other medical professionals routinely testify as experts since their specialized knowledge generally helps the jury resolve medical issues." *Jahn*, 233 F.3d at 389 (quoting Weinstein's Federal Evidence § 702.04[4]. The cause and manner of death in the present case are medical issues which the jury must decide. Dr. Levy's expert opinion will aid in that effort.

Finally, the Court finds that Dr. Levy's testimony is based upon sufficient facts and data; it is the product of reliable methods; and the methods have been applied reliably to the facts of the case. Dr. Levy's opinions are based upon the facts contained in three independent autopsies and two NTSB reports. It is difficult to discern, and Comair does not suggest, what more would be appropriate. Dr. Levy's methodology is set forth in his report and is consistent with his years of work experience. [DE 3471, Ex. 1, Bates 101-102]. Dr. Levy analyzed the medical and aeronautical information by gathering data regarding the specific circumstances surrounding Woodward's death and the literature on the subject. He then applied this data along with his experience with similar circumstances to determine the medical, physical and mental effects on

Woodward. Comair does not attack any specific aspect of Dr. Levy's methodology or its reliability. Comair's conclusory allegations of insufficiency do not warrant exclusion of Dr. Levy's testimony.

**C.     CONCLUSION**

**IT IS ORDERED** that Comair's motion in limine to exclude the testimony of Dr. Richard A. Levy [DE 3471] is **DENIED**.

This June 19, 2009.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge