UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

**CIVIL ACTION (MASTER FILE) NO. 5:06-CV-316 - KSF**

IN RE: AIR CRASH AT LEXINGTON, KENTUCKY, AUGUST 27, 2006

RELATING TO:

*Hebert, et al. v. Comair*, et al., No. 5:07-CV-320

**OPINION AND ORDER**

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Jamie Hebert's' motion to vacate the court order excluding Dr. Frank Ochberg's testimony [DE 3611] and her motion to allow Dr. Ochberg to testify to matters described in his affidavit with the exception of Paragraph 43 [DE 3627]. These matters are ripe for consideration after having been fully briefed.

**I.    BACKGROUND**

In October 2008, Jamie Hebert moved to file a Second Amended Complaint adding her personal injury claim for reckless infliction of emotional distress. [DE 3351]. In March 2009, Hebert moved to substitute a Third Amended Complaint stating additional factual bases for her claim of reckless infliction of emotional distress and adding new claims against Comair and Delta of emotional distress as a result of conduct directed toward her by Delta and Comair employees after the plane crash. [DE 3442]. In May 2009, this Court denied both of the motions as unduly delayed, highly prejudicial, and futile in part. [DE 3473].

While the motion to amend was pending, Jamie Hebert was examined by Frank M. Ochberg, M.D., and he provided a report in the form of an affidavit on December 29, 2008. [DE 3627-2]. In forming his opinions, he considered, among other things, the Comair Family Assistance Plan, the Delta Family Assistance Plan and the proposed Second Amended Complaint. *Id.* ¶ 8.

Dr. Ochberg's affidavit notes particularly her treatment by the family care staff and her subsequent intrusive memories relating to her experience in Kentucky. ¶¶ 12, 14, 15, 20. Dr. Ochberg concluded that Jamie "Hebert suffers from PTSD and Dysthymia." ¶ 31. As the cause, he states: "[i]n learning of her husband's death, and in her treatment by agents of the airline responsible for her husband's death, she was exposed to a traumatic event...." ¶ 32. The affidavit continues with a discussion of many of the symptoms associated with this trauma. ¶¶ 33 - 41. He states her "current condition is caused by the plane crash of August 27, 2006, and has been aggravated by the conduct of the family care team in the aftermath of the crash." ¶ 42. He opines that she did not receive "the treatment she should have by the family care team," and that her condition will require therapy and treatment for the indefinite future. ¶¶ 43-44. He further opines that as "a result of the crash and the consequent medical disability," she is "vocationally impaired." ¶ 48.

Dr. Ochberg also reported on an alleged phone call, apparently described to him by Jamie Hebert, that she believes was "from her husband as he burned to death." ¶ 10. She fell back to sleep after the call, not sure if it was real or a dream, and later learned that Bryan had died in the plane crash. *Id.* Comair moved *in limine* to exclude evidence of this alleged conversation on grounds that it was not corroborated by phone company records, was inconsistent with the brief accident sequence and was unfairly prejudicial. This Court held that, absent some verification that such a telephone call occurred and was not merely a dream, "the proposed testimony is highly inflammatory and is likely to suggest a decision on an improper, emotional basis." [DE 3530, p. 3]. If the existence of the call could be verified, the Court said it would reconsider its ruling. No verification was provided to the Court.

After the Supreme Court of Kentucky held on October 1, 2009, that KRS 411.145 allows a claim for post-death loss of spousal consortium, Plaintiff moved to vacate the Opinion and Order dated June 23, 2009 [DE 3585] that excluded all testimony of Dr. Ochberg relating to Jamie Hebert's personal damages. [DE 3611]. She also moved to allow Dr. Ochberg to testify to the

2

matters described in his affidavit, with the exception of paragraph 43, which stated his opinion that she did not receive the treatment she should have from the care team.

Comair opposed the motions on the ground that Dr. Ochberg's report "does not mention loss of consortium or its components," but instead suggests Jamie Hebert suffered personal injury as a result of the alleged phone call during the crash and her alleged mistreatment by family assistance members. [DE 3624]. Comair argues that a loss of consortium claim is limited to the loss of the marital relationship as described in KRS 411.145 and does not include any separate injury to the spouse. The claims described by Dr. Ochberg have already been excluded by the Court. *Id.* at 5. Comair also argues it cannot cross examine Dr. Ochberg regarding the change in his testimony without opening the door to subjects properly excluded, and any testimony now that her diagnosis was caused by the loss of spousal relationship "would be tantamount to allowing perjury." *Id. See also* DE 3647. Comair notes there are many paragraphs in the report that reference her alleged treatment by the care team and trauma associated with the alleged phone call. [DE 3647, pp. 2-4].

## II.     ANALYSIS

The report of Dr. Ochberg regarding Jamie Hebert's personal injury is not admissible at the upcoming trial on compensatory damages because it does not relate to any claim pending before the Court. The only new claim that the Court has agreed to consider is Jamie Hebert's claim for loss of consortium. For purposes of a claim for loss of spousal consortium, KRS 411.145 defines "consortium" as "the right to the services, assistance, aid, society, companionship and conjugal relationship between husband and wife, or wife and husband." KRS 411.145(1).

Dr. Ochberg's report does not identify any impact on Jamie Hebert resulting from a loss of consortium. Its focus was and is on the personal injury Jamie Hebert suffered, which he opines was caused by the plane crash and her alleged treatment by the care team. The Court previously ruled that Jamie Hebert cannot bring personal injury claim against Comair. Accordingly, evidence

of Jamie Hebert's personal injury is not relevant and is not admissible. The result would be the same if Ms. Hebert fell while running to tell someone about her husband's death and broke several bones. The injury and related suffering would certainly be real, but it would not be a claim for which she would be entitled to compensation by Comair under Kentucky law and its requirement of impact..

Assuming other requirements for a loss of consortium claim are met, the Court will allow testimony regarding her loss of "services, assistance, aid, society, companionship and conjugal relationship." Dr. Ochberg's report does not address that subject and is not relevant to that claim.

Plaintiff argues that this Court allowed similar testimony regarding Lauren Hebert and Mattie-Kay Hebert. [DE 3639, p. 2]. However, the testimony there was "directed at 'the impact of the loss of affection and companionship of their father on Lauren and Mattie-Kay.'" [DE 3560, p. 2]. Similarly, the testimony of Dr. Bower in *Hyman & Armstrong v. Gunderson*, 279 S.W.3d 93 (Ky. 2009) concerned "how the loss of their mother affected Nicholas and Wesley relative to their loss of parental consortium claim." *Id.* at 117. In the present case, if Dr. Ochberg had directed his testimony to the impact of the loss of consortium on Jamie Hebert, it would have been relevant to her claim. In its present form, it is not relevant.

### III.   CONCLUSION

**IT IS ORDERED** that Plaintiffs' motion to vacate the court order excluding Dr. Frank Ochberg's testimony [DE 3611] and her motion to allow Dr. Ochberg to testify to matters described in his affidavit with the exception of Paragraph 43 [DE 3627] are **DENIED**.

This November 19, 2009.



Signed By:

*Karl S. Forester*   KSF

**United States Senior Judge**